UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HARJEET BHAMBHANI,<br><br>Defendant. | Criminal No. 11-cr-280 (PGS)<br><br>**MEMORANDUM DECISION** |

At the sentencing of Mr. Bhambhani, Core-Mark moved to be considered a victim of the offense under the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A, and the Victims and Witnesses Protection Act ("VWPA"), 18 U.S.C. § 3663, so that it would be entitled to a portion of the restitution. The pre-sentencing report did not include Core-Mark as a victim, and the U.S. Attorney indicated that Core-Mark is not a victim. For the reasons stated below, Core-Mark's motion is denied.

Background

On May 16, 2012, Harjeet Bhambhani was sentenced by this Court to 37 months in prison for his involvement in defrauding 12 corporate victims ("the Victim Providers") by creating and utilizing shell companies, fake websites, and aliases to steal more than $4.4 million worth of Voice Over Internet Protocol ("VOIP"). In this scheme, Bhambhani stole VOIP telephone services from the Victim Providers by defrauding them with the use of fake addresses, phony websites, and aliases, and sold these stolen services for a profit. The scheme began in early 2001 and ended when Bhambhani's co-conspirator Vinod Tonangi, was arrested on March

24, 2010.

Core-Mark asserts that it is among the victims in the VOIP scheme and should be allowed to share in the restitution granted to the Victim Companies. Core-Mark is a wholesaler of grocery products primarily for gas stations and convenient stores. It suffered losses in its dealings with Sai Nam, a Pennsylvania company formed on April 16, 2008, and for which defendant Bhambhani was the registered agent with the Pennsylvania Secretary of State. Sai Nam owned and operated several gas stations under the name "Fuel On", and purchased convenient stores from a company called Uni-Mart after it filed for bankruptcy. Core-Mark claims that between April 2008 and June 2009, Bhambhani and his business associates formed 27 separate companies, including Sai Nam, all of which operated gas stations and convenient stores in Pennsylvania.

On March 30, 2010, Bhambhani signed a credit agreement with Core-Mark on Sai Nam's behalf, which also contained a guarantee of payment, for which Bhambhani would be personally liable for any indebtedness owed by Sai Nam to Core-Mark. Under this credit agreement, Sai Nam ordered over $200,000 in merchandise for the convenient stores from Core-Mark. Core-Mark provided requested products to Sai Nam, and also provided an additional $15,000.00 in food and coffee equipment, which Sai Nam never paid for or returned. Core-Mark asserts that in addition to the debts incurred through its transaction with Sai Nam, it is also owed over $1.3 million from the other companies which Bhambhani and his business associates formed between April 2008 and June 2009.

In its assertions that it is a victim of the VOIP scheme, Core-Mark claims that Defendant Bhambhani's actions with respect to Sai Nam and the other Pennsylvania companies formed between April 2008 and June 2009 were an extension of the VOIP scheme. Core-Mark claims

that the convenient store purchases were financed in part through a wire transfer of $233,000.00 from OM Telecommunications, Inc. ("OM Telecom"). Core-Mark believes that OM Telecom is one of the shell companies that defrauded the Victim Providers in the VOIP scheme, therefore making Core-Mark a victim in that scheme and entitling it to a share in the restitution.

Analysis

Under both the MVRA and VWPA, a victim is defined as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A, 18 U.S.C. § 3663(a)(2). This definition was derived through Congress's amendment of the VWPA, which expanded the restitution granting authority of district courts following the Supreme Court decision in *Hughey v. United States*. In that case, the Supreme Court held that restitution be paid "only for the loss caused by the specific conduct that is the basis of the offense of conviction." 495 U.S. 411, 413 (1990) (emphasis added).

However, this expansion of restitution granting authority has its limitations. The definition of victim under the VWPA "is not so broad that it permits a district court to order restitution to anyone harmed by any activity of the defendant related to the scheme, conspiracy, or pattern." The plain language of the MVRA and VWPA states that a person be "directly harmed by the defendant's criminal conduct" for restitution purposes. 18 U.S.C. § 3663A; 18 U.S.C. § 3663(a)(2); *U.S. v. Kones*, 77 F.3d 66, 70 (3d Cir. 1996) (noting that "the harm must 'directly' result from the 'criminal conduct' of the defendant").

The Third Circuit sheds light on the meaning of other language in the statute. In *Kones*, it interpreted "direct" harm to the victim to mean a harm that is "closely related to the scheme, rather than tangentially linked." *Id.* at 70. More recently, in *U.S. v. Fallon*, the Third Circuit adopted a two-prong test in determining whether harm is a direct result from the criminal conduct of a defendant and restitution is appropriate. The first prong states that "restitution should not be ordered in respect to a loss which would have occurred regardless of the defendant's conduct." *U.S. v. Fallon*, 470 F.3d 542, 549 (3d Cir. 2006) (quoting *United States v. Vaknin*, 112 F.3d 579, 589 (1st Cir. 1997). The second prong of analysis asks a court to consider that "even if but for causation is acceptable in theory, limitless but for causation is not. Restitution should not lie if the conduct underlying the offense of conviction is too far removed, either factually or temporally, from the loss." *Id.*

Here, we must apply the two-prong test to determine whether Core-Mark's losses in its dealings with Bhambhani's gas station and convenient store businesses, Sai Nam, constitute harm directly resulting from defendant's criminal conduct in his VOIP fraud scheme.

In examining the evidence presented by Core-Mark, there is no evidence proffered by Core-Mark that Sai Nam or the other gas station business were in any way related to the VOIP scheme, except that OM Telecom furnished money for the purchase of a single convenient store. Therefore, the first prong of the test is not satisfied.

The second prong of the test is also not satisfied. Core-Mark argues that except for the VOIP scheme, Bhambhani would not have had adequate capital to purchase gas stations and convenient stores using $233,000.00, which was wired from OM Telecommunications, and he would not have defaulted on its payments to Core-Mark. This theory is remote. This relationship is too attenuated to label Core-Mark a victim in the VOIP scheme.

4

Conclusion

For the foregoing reasons, Core-Mark is not a victim under MVRA and VWPA and is not entitled to share in the restitution granted to the victims of Bhambhani's VOIP scheme. The judgment shall be amended to include restitution for victims, but will not include Core-Mark.

                                                    *s/Peter G. Sheridan*
                                                   PETER G. SHERIDAN, U.S.D.J.